**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KRISTINA TENEYCK,**

         **Plaintiff,**

 vs.               **1:12-CV-0308
                   (MAD)**

**CAROLYN W. COLVIN,**
*in place of Michael J. Astrue,*
**Commissioner of Social Security,**

         **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **IRWIN M. PORTNOY & ASSOCIATES, PC**<br>542 Union Avenue<br>New Windsor, New York 12550<br>Attorneys for Plaintiff | **IRWIN M. PORTNOY, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>Office of Regional General Counsel<br>Region II<br>26 Federal Plaza - Room 3904<br>New York, New York 10278 | **MONICA K. PROCTOR, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff commenced this action on February 22, 2012, pursuant to 42 U.S.C. § 405(g), seeking review of a decision of the Commissioner of Social Security denying Plaintiff's application for Social Security Disability Insurance Benefits ("DIB"), and a concurrent denial of Supplemental Security Income ("SSI"). *See* Dkt. No. 1. On August 24, 2012, the Commissioner moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for a judgment on the pleadings. *See* Dkt. No. 13. While that motion was pending, Plaintiff filed a motion to remand

under the sixth sentence of 42 U.S.C. § 405(g), in light of "new and material evidence." *See* Dkt. No. 19.

Currently before the Court is the Commissioner's motion for judgment on the pleadings and Plaintiff's motion for remand.

## II. BACKGROUND

**A.  Procedural history**

On July 15, 2009, Plaintiff filed an application for DIB, alleging an onset of disability of August 16, 2006.  *See* Tr.[1] at 127; *see also* Dkt. No. 1 at ¶ 6.  On July 16, 2009, Plaintiff filed an application for SSI.  *See id.* at 129.  On May 13, 2011, after a video hearing, Administrative Law Judge ("ALJ") Robert Gonzalez issued a decision denying the applications.  *See id.* at 17.  On December 9, 2011, the Appeals Council denied a request for review.  *See id.* at 5.

**B.  Evidence before the ALJ**

Plaintiff was born on October 20, 1973.  *See* Tr. at 127.  Plaintiff received her GED in 1992.

At the time of the hearing, Plaintiff was thirty-seven years old with a high school education by way of a GED.  *See* Dkt. No. 1 at 9.  In disability reports and hearing testimony, Plaintiff contended that she became disabled on August 16, 2006, due to Fibromyalgia, chronic fatigue syndrome, seasonal depression, anxiety, obsessive compulsive disorder ("OCD"),

---

[1] References to the administrative record are denoted by "Tr." followed by the relevant page number.

2

trichotillomania,[2] arthritis in the back and right knee, poor concentration, and side effects from medications. *See id.* Prior to the alleged onset date, Plaintiff worked at a variety of jobs that included work in jewelry sales, grocery clerk, customer service, cashier, bartender, retail assistant manager, assembly person, and administrative assistant. *See id.*

Plaintiff has a history of knee surgeries. *See id.* The first procedure was performed in 1999 and consisted of an arthroscopic and patellofemoral stabilization. *See id.* Plaintiff again underwent surgery in 2000 for suture removal. *See id.* Several years later, Plaintiff underwent chondroplasty and synovectomy due to persistent patellofemoral symptoms. *See id.*

The medical record indicates that Plaintiff has had complaints of lower back pain since the birth of her son. *See id.* The pain was made worse after breast feeding her son, exacerbated by lifting, bending, lying and standing. *See id.* An MRI of the lumbar spine performed on May 13, 2008, showed mild right-sided bulge at L3-L4, signal loss and disc at L4-L5 with focal right posterior extrusion with compression of right L5 nerve root. *See id.* The L5-S1 disc was normal. *See id.* There were mild degenerative changes in the facet joints. *See id.* X-rays of the lumbar spine demonstrated mild lumbar scoliotic curve. *See id.* Reports from treating orthopedics at Orthopedics Associates, other treating and examining sources verify the diagnosis of left lumbar facet dysfunction, bilateral greater trochanteric bursitis, left greater than right, and lumbar spondylosis. *See id.* Plaintiff was prescribed the following treatment for the above conditions: various medications, including Lyrica, Vicodin and daily lidocaine patches, physical therapy, epidural steroid injection, lumbar steroid injection, right-sided lumbar medial branch blocks bursa

---

[2] Trichotillomania is a type of impulse control disorder which causes an irresistible urge to pull out ones hair, usually from the scalp, eyelashes, and eyebrows.

injection, left lumbar facet blocks, and TENS unit. *See id.* at 9-10 (citations omitted); *see also* Tr. at 54-56.

On May 5, 2008, Plaintiff was referred to Dr. Andrew Stewart of Orthopedic Associates for complaints of back pain and bilateral knee pain. *See* Dkt. No. 1 at 10. On examination, Dr. Stewart indicated that Plaintiff was pleasant, healthy, appeared in no acute distress, and that her affect and gait were normal. *See id.* Examination of the right knee showed a well-healed vertical incision over the patella without the presence of effusion. *See id.* An MRI of the right knee performed on May 12, 2008, showed no evidence of meniscal tear. *See id.* Exam showed lateral tilt of the patella with tenderness along the medial joint line and positive crepitus. *See id.* Dr. Steward's impression was of a bilateral patellofemoral syndrome with right knee patellofemoral osteoarthritis status post arthrospcopy, and a possible right knee medial meniscus tear. *See id.* Dr. Steward prescribed physical therapy, patellofemoral stabilizing braces for both knees, and injections. *See id.* (citations omitted).

On June 9, 2008, Plaintiff reported improvement in her right knee with Synvise injections. *See id.* (citation omitted). Dr. Steward indicated that, after a long absence of treatment, Plaintiff returned on July 24, 2009, requesting addition Synvise injections due to recurrence of her symptoms. *See id.* (citation omitted).

Plaintiff had a longstanding history of treatment with Dr. Niraj Sharma, a Board Certified Pain Specialist at Orthopedics Associates. *See id.* A June 30, 2008 physical examination showed cranial nerves II through XII were grossly intact. *See id.* Lower extremity strength was 5/5. *See id.* Plaintiff demonstrated tenderness over the greater trochanteric bursa, and positive lumbar facet loading. *See id.* The exam showed increased extension of fifteen degrees and flexion greater than ninety degrees. *See id.* Also, Plaintiff demonstrated a slight antalgic gate, with no

calf tenderness or muscle atrophy. *See id.* Dr. Sharma indicated that, even though Plaintiff had a disc protusion at L4-L5, she did not feel that it was symptomatic. *See id.* Further, Plaintiff was scheduled for right sided lumbar medial branch blocks. *See id.* (citations omitted).

On October 5, 2009, DDS examining physician Dr. Amelita Balgras conducted an orthopedic examination. *See id.* at 11. Plaintiff presented with complaints of lower back and right knee pain, which started after the birth of her son. *See id.* Plaintiff described the pain as an ache, radiating up her back, and occasionally in both buttocks. *See id.* Plaintiff stated that her condition is aggravated by damp weather, sitting, standing, or walking for prolonged periods. *See id.* Plaintiff's ongoing knee pain was described as an ache, aggravated by cold, damp weather, lifting, and stair activities. *See id.* Plaintiff informed Dr. Balgras that she had been diagnosed with Fibromyalgia in April 2009. *See id.* Dr. Balgras indicated that Plaintiff did not appear to be in acute distress, she had a normal gate, could walk on her heels and toes without difficulty and could squat half way. *See id.* Plaintiff did not use an assistive device, she did not need help changing or getting on and off the examination table, and was able to rise from her chair without difficulty. *See id.* Plaintiff demonstrated tenderness over the lumbar paraspinals, but demonstrated no spinal, SI joint, or sciatic notch tenderness. *See id.* Dr. Balgras noted peripatellar tenderness in the right knee and crepitation on flexion of the knee. *See id.* Dr. Balgras provided a diagnosis of lower back pain, musculoskeletal origin, right knee pain, and Fibromyalgia. *See id.* Dr. Balgras found that Plaintiff would have slight to moderate limitations in activities that require bending, lifting, prolonged sitting, standing, walking, kneeling, and squatting. *See id.*

Additionally, the record demonstrates that Plaintiff had been under the care of James Wise since December 8, 2009 for her Fibromyalgia diagnosis. *See id.* The record demonstrates that

5

Plaintiff had generalized myalgias for several years, but her major problems were fatigue, depression, and generalized pain. *See id.* Plaintiff demonstrated twelve-to-fourteen tender points during a physical exam. *See id.* On May 6, 2010, Plaintiff's symptoms of chronic pain, sensitization, poor sleep, fatigue, and discomfort were stable. *See id.* Plaintiff reported that she found Lyrica to be helpful. *See id.* On October 4, 2010, her symptoms had increased due to menses, discontinuing medication, and change in the weather. *See id.* Despite this, Plaintiff reported that her energy level was stable and that medication helped her sleep. *See id.* Further, Plaintiff indicated that she had been able to restart an exercise program. *See id.* Weiss found that twelve-to-fourteen tender points were still present, but less sensitive. *See id.*

On November 23, 2010, Linda Lauretta, a licensed social worker at Maverick Family Counseling, indicated that Plaintiff entered the office for treatment on May 22, 2008 for anxiety, depression, and trychotillomania. *See id.* Ms. Lauretta indicated that Plaintiff had made little to no improvement in managing her anxiety. *See id.* Plaintiff had persistent anxiety and depressive symptoms, both of which were resistant to treatment. *See id.* Ms. Lauretta indicated that these conditions were complicated by her physical medical issues, namely fibromyalgia, back pain, and frequent stomach ailments. *See id.* Plaintiff's symptoms included inability to focus, poor memory, poor social interaction, and pre-occupation with her medical problems. *See id.* Ms. Lauretta reported that her prognosis was poor. *See id.* (citations omitted).

At the request of the Division of Disability Services ("DDS"), Plaintiff saw Annette Payne, Ph.D., on October 5, 2009. *See id.* at 12. Plaintiff drove herself to the examination. *See id.* Plaintiff reported to Dr. Payne feelings of depression most of the time, difficulty with reading, comprehension, spelling, sleeping, unstable appetite, increasing difficulties with depression and anxiety related to her back pain, dysphoric mood, crying, guilt, hopelessness, loss of interests,

irritability, fatigue, worthlessness, diminished self-esteem, cognitive interference, diminished sense of pleasure, excessive apprehension and worry, restlessness, difficulty concentrating, and muscle tension. *See id.* Plaintiff stated, however, that she did not suffer from panic attacks. *See id.*

At the hearing, Plaintiff testified that she had not looked for work since 2006, when she gave birth to her son. *See id.* Plaintiff stated that she has problems sleeping and often wakes up during the night. *See id.* Moreover, Plaintiff testified that she had her third knee surgery in 2010. *See id.* However, Plaintiff indicated that her kneecap still "goes to the right, pulls on tendons," and feels like they are dislocated and often locks. *See id.* She indicated that she has continued with physical therapy for her conditions. *See id.*

Thereafter, Plaintiff testified that she suffers side effects from her medication, including fatigue, dizziness, and problems with memory and concentration. *See id.* Lyrica helps her deal with the symptoms associated with Fibromyalgia, while Aleve helps the pain in her back and joints. *See id.* Plaintiff also receives shots of B12 for anemia two times per month and uses Lidoocaine patches every day to help manage her pain. *See id.* Moreover, Plaintiff indicated that she receives shots to alleviate the pain in her back. *See id.* Plaintiff testified that she can stand for approximately ten-to-fifteen minutes at a time. *See id.* Further, she takes Ativan to help her sleep and was prescribed psychotropic medication, which provides limited help with her depression. *See id.* Moreover, Plaintiff testified that she has no hair because she pulls it out. *See id.* Plaintiff indicated that she spends most of her days in bed. *See id.* Plaintiff claimed that she is in constant pain, that she suffers from severe anxiety, and that her physical and mental conditions render her incapable of gainful employment. *See id.*

**C.    ALJ's Gonzalez's decision**

In a May 13, 2011 decision, the ALJ found that Plaintiff was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  *See* Dkt. No. 1 at 17.  The ALJ found that Plaintiff's statements about the intensity, duration, and limiting effects of her symptoms are not consistent with the record and, therefore, not entirely credible.  *See id.*  The ALJ noted that, although Plaintiff did complain of pain in the back, loss of memory, and that she was in distress, "this is sharply contradicted by treating source notes such as notes from Dr. Ramaswamni, who found her in no acute distress, well developed, and . . . doing well.  Her general health was good."  *See id.*  Further, the ALJ found that Plaintiff's treatment was sporadic and that she had been consistently non-compliant with prescribed medical treatment.  *See id.*  He noted that, "[d]espite the complaints of allegedly disabling symptoms, there have been significant periods since the alleged onset date during which [Plaintiff] has not taken any medications for those symptoms.  The evidence suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal."  *Id.*

At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability of August 16, 2006.  Next, the ALJ determined that Plaintiff had the following severe impairments: status-post right knee arthroscopy three times, lumbar disc herniation, Fibromyalgia, anemia, anxiety, obsessive compulsive disorder, and trychotillomania.  *See* Tr. at 19.  At the third step, the ALJ determined that Plaintiff's impairments did not meet or equal the criteria of the listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  *See* Tr. at 19-20.  The ALJ next assessed Plaintiff's residual functional capacity – *i.e.*, what Plaintiff could still do – mentally and physically – despite her impairments.  The ALJ concluded that Plaintiff could perform light work as defined in 20

C.F.R. §§ 404.1567(b) and 416.967(b), engage in occasional postural positions, and remember and carry out simple tasks. *See id.* at 20. Based on Plaintiff's RFC, the ALJ found at the fourth step that Plaintiff could not perform her past relevant work, which was all skilled or semi-skilled. *See id.* at 28. Finally, at the fifth step, the ALJ considered Plaintiff's age, education, work experience, and RFC, and found that Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy. *See id.* Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. *See id.* at 29.

On December 9, 2011, the Appeals Council denied Plaintiff's request for review. *See* Dkt. No. 1 at 21. As such, the ALJ's decision is the final decision of the Commissioner.

### III. DISCUSSION

**A.     Plaintiff's motion to remand and "new" evidence in support**

On July 24, 2011, Plaintiff filed an additional application for disability benefits. Plaintiff asserted that she had been disabled since June 24, 2011. *See* Dkt. No. 19-2. After a hearing, on December 12, 2012, ALJ Carl Stephan issued a decision finding Plaintiff disabled since June 24, 2011. *See* Dkt. No. 20-1 at 5-14.

In his decision, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, herniated discs and arthritis in the lumbar spine, residual effects of injuries and surgeries to the right knee, anxiety, depression, and an obsessive-compulsive disorder. *See id.* The ALJ then found that Plaintiff had the residual functional capacity to perform sedentary work with the following exceptions: Plaintiff can stand and walk for a maximum of one hour in an eight hour workday; Plaintiff can sit for a maximum of four hours in an eight hour workday; Plaintiff can occasionally understand, remember, and carry out simple instructions as a result of impaired

9

concentration and memory; Plaintiff can occasionally interact appropriately with others; Plaintiff is unable to make work-related decisions; Plaintiff is frequently unable to maintain a regular schedule; and Plaintiff is expected to be absent from work at least three days each month due to the severity of her impairments and required medical treatment. *See id.*

On September 12, 2011, Plaintiff was examined by Dr. Alex Gindes for a consultative psychiatric examination. *See* Dkt. No. 19-1 at 488-492. In addition to discussing Plaintiff's various medical conditions from as early as 1996, Dr. Gindes reviewed Plaintiff's medical history, including her psychiatric treatment from 2008 through June 2011 at Maverick Family Counseling. *See id.* at 488. Further, Dr. Gindes discussed Plaintiff's treatment at Spectrum Behavioral Health Clinic "for a number of years," as well as her treatment with Hani Khalil for the two-years prior to her examination with Dr. Gindes. *See id.* Dr. Gindes found that Plaintiff's affect was tense and anxious, "but appropriate in speech and thought content." *See id.* at 490. Further, Dr. Gindes found that Plaintiff's attention and concentration were "significantly impaired by anxiety in the evaluation and OCD. [Plaintiff] did poorly on simple calculations and serial 3s." *See id.* Moreover, Dr. Gindes noted that Plaintiff's recent and remote memory skills were significantly impaired" and that her "[i]ntellectual functioning was estimated to be in the borderline range with somewhat limited general fund of information." *See id.*

Dr. Gindes found that Plaintiff can follow and understand simple directions and instructions; however, she is not likely to maintain attention and concentration or maintain a regular schedule." *See id.* at 490-91. Moreover, although Dr. Gindes found that Plaintiff can learn new tasks, he also found that she "is not likely to perform complex tasks independently." *See id.* at 491. Also, Dr. Gindes noted that Plaintiff is not likely to relate adequately with others or appropriately deal with stress, and that her "difficulties are caused by symptoms of OCD and

10

cognitive deficits." *See id.* As such, Dr. Gindes found that "[t]he results of the examination appear consistent with psychiatric and cognitive problems, and this may significantly interfere with [Plaintiff's] ability to function on a daily basis." *See id.* In his decision, ALJ Stephan stated that, "[e]ven though Dr. Gindes examined claimant only once, I grant his opinion great weight because his assessment is supported by his observations of claimant and because his assessments are consistent with claimant's history of mental health treatment." *See* Dkt. No. 20-1 at 11.

In her motion, Plaintiff argues that Dr. Gindes' report is new and material evidence, which warrants remand under sentence six. *See* Dkt. No. 19-2 at 6. Plaintiff claims that this new evidence "undermines the basis on which the ALJ in the instant action" concurred with the determinations of certain DDS examining physicians and psychiatrists, in that he rejected Plaintiff's complaints of pain and its intensity, as well as his rejection of Ms. Lauretta's opinions. *See id.* Plaintiff asserts that this new evidence/subsequent decision would likely have affected ALJ Gonzalez's decision, which renders it material. *See id.* (citing *Gold v. Secretary of Health, Ed. and Welfare*, 463 F.2d 38, 44 (2d Cir. 1982)).

**B.     Standard of review and application**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

In reviewing the denial of a claim, the Court will typically employ the traditional five-step analysis set forth in *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Here, though, the Court will first assess Plaintiff's arguments about new evidence.

Upon judicial review of a denial, a district court may remand a case to the Commissioner to consider additional evidence that was not included as part of the original administrative proceedings. *See* 42 U.S.C. § 405(g) (sentence six) ("The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . ."). This type of remand,

commonly referred to as a "sentence six remand," is only appropriate if a plaintiff can show that the evidence is (1) new and not cumulative of what is already in the record; (2) material in that it is relevant to the claimant's condition during the time period for which benefits were denied and there is a reasonable possibility that the new evidence would have influenced the Commissioner to decide the disability determination differently; and (3) good cause has been shown for failing to present the evidence earlier. *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991); *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) (quoting 42 U.S.C. § 405(g)). A sentence four remand is "particularly appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would plainly help to assure the proper disposition of a claim." *Kirkland v. Astrue*, No. 06 CV 4861, 2008 WL 267429, *8 (E.D.N.Y. Jan. 29, 2008) (internal quotations and alterations omitted); *see also Butts*, 388 F.3d at 385 (quoting *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999)).

In the present matter, the Court finds that this case must be remanded pursuant to sentence six for consideration of the new evidence submitted. In *Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991), the plaintiff was seeking a sentence six remand in light of new evidence consisting of, among other things, "the reports of four physicians concurring in the diagnosis that Lisa suffers from fibromyalgia[.]" *Lisa*, 940 F.2d at 43. The Second Circuit held that

> "evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement [*i.e.*, insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement

13

> date or may identify additional impairments which could reasonably
> be presumed to have been present and to have imposed limitations
> as of the earning requirement date."

*Id.* at 44 (quotation omitted). Further, the court held that, "when, as in this case, a diagnosis emerges after the close of administrative proceedings that 'sheds considerable new light on the seriousness of [a claimant's] condition,' evidence of that diagnosis is material and justifies remand." *Id.* (quotation omitted). Finding remand appropriate, the court found that the introduction of the plaintiff's "new diagnostic evidence would present a reasonable possibility of influencing the Secretary to decide her application differently." *Id.* Additionally, the Second Circuit found that the evidence "would suggest that [the plaintiff] had an impairment substantially more severe that was previously diagnosed . . . [and] would also substantially bolster the credibility of [the plaintiff's] subjective complaints." *Id.*

Similar to *Lisa*, in the present matter, Dr. Gindes' report and Plaintiff's subsequent grant of disability benefits shed considerable new light on the seriousness of Plaintiff's condition and present a reasonable probability of influencing the Commissioner to decide her application differently. ALJ Stephan, in his December 12, 2012 favorable decision, considered not only evidence of Plaintiff's conditions during the period beginning June 24, 2011 – the alleged onset of disability – but also medical records and testimony concerning the period of alleged disability at issue in the present case. *See* Dkt. No. 20-1 at 10-12. Similarly, Dr. Gindes considered Plaintiff's physical and mental health history and treatment beginning in 1994 through the date of his examination of Plaintiff. *See* Dkt. No. 19-1 at 488-492. Dr. Gindes discussed Plaintiff's 1996 asthma diagnosis, her 2009 fibromyalgia diagnosis, as well as her "several serious compulsions, such as trichotillomania, PICA, and compulsive nail biting." *See id.* at 489. As a result of his review of Plaintiff's medical history and examination, Dr. Gindes found that Plaintiff has

14

"psychiatric and cognitive problems, and this may significantly interfere with [Plaintiff's] ability to function on a daily basis." *See id.* at 491.

To the contrary, ALJ Gonzalez found that Plaintiff's "statements about the intensity, duration, and limiting effects of these symptoms are not consistent with the record, and therefore, not entirely credible. Although [Plaintiff] has reported ongoing symptoms, I find her description of symptoms is only partially credible. [Plaintiff] did complain of pain in the back, loss of memory, and in distress, however, this is sharply contradicted by treating source notes such as notes from Dr. Ramaswamni, who found her in no acute distress, well developed, and was doing well." *See* Dkt. No. 1 at 12. ALJ Stephan's decision, relying in part on Plaintiff's medical records and history from the same time period, reached a markedly different result, finding Plaintiff's subjective complaints well supported by the medical records, including Dr. Gindes' September 12, 2011 report.

Although there is some doubt as to whether a decision granting a subsequent application for benefits should be considered "evidence" for sentence six remand purposes, *see Lopez v. Barnhart*, No. 07 CIV.7516, 2002 WL 1822739, *3 n.2 (S.D.N.Y. Aug. 8, 2002); *see also Allen v. Comm'r of Social Security*, 561 F.3d 646, 653 (6th Cir. 2009); *Perry v. Astrue*, Civil Action No. 10-110004, 2012 WL 645890, *11 (D. Mass. Feb. 27, 2012) ("The mere fact that a second ALJ weighed the evidence differently does not authorize reversal by a district court; the standard is whether the first ALJ's decision was supported by substantial evidence on the record, not whether it was the only possible reasonable decision"); this Court need not resolve the issue in this particular case because the new evidence submitted, by itself, justifies such a remand. On remand, the ALJ will be able to reconsider the record, supplemented to include the new records.

The ALJ will then be called upon to make a determination under the sequential framework applicable to applications for benefits.

The last issue is whether Plaintiff has shown "good cause" for failing to submit this evidence earlier. This Court finds that good cause has been established since the evidence did not exist when the ALJ rendered his decision. *See Beede v. Comm'r of Soc. Sec.*, No. 1:12-cv-1072, 2013 WL 5217673, *8 (N.D.N.Y. Sept. 16, 2013) (citations omitted).

Based on the foregoing, the Court finds that this new evidence (1) is "relevant to the claimant's condition during the time period for which benefits were denied;" (2) is probative; and (3) that there is "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide [Plaintiff's] application differently." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (quotation omitted). As such, Plaintiff's motion to remand under the sixth sentence of 42 U.S.C. § 405(g) is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for a sentence six remand (Dkt. No. 19) is **GRANTED**; and the Court further

**ORDERS** that this action be remanded to the Commissioner for further consideration pursuant to sentence six of 42 U.S.C. § 405(g); and the Court further

**ORDERS** that the parties' motions for judgment on the pleadings are **DENIED** as moot; and the Court further

**ORDERS** that the Clerk of the Court shall close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 12, 2014
      Albany, New York

Mae A. D'Agostino
U.S. District Judge